IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

ROBERT SHEPARD                                                              PLAINTIFF

VS.                                                                NO. 2:04CV330-D-B

CITY OF BATESVILLE, MISSISSIPPI                                             DEFENDANT

OPINION DENYING POST-TRIAL MOTIONS

Presently before the court is the Defendant's renewed motion for judgment as a matter of law or, in the alternative, for new trial or remittitur. Upon due consideration, the Court finds that the motions shall be denied.

*A. Factual and Procedural Background*

The Plaintiff initiated this antitrust action on November 19, 2004. The Plaintiff, Robert Shepard, owns a construction business in Courtland, Mississippi. The Plaintiff's business involves earthmoving work, dirt movement and removal, gravel supplies, and other business involving trucks and tractors. The Plaintiff performs contract work in North Mississippi and in Memphis, Tennessee.

During the years 2003 and 2004, the Plaintiff submitted bids on public contracts with the Defendant City of Batesville. During those years, the Plaintiff was the lowest and best bidder on several contracts and the alternate bidder on other contracts. Despite being the lowest and best bidder, the Plaintiff received only one job during those two years. The other Defendants in this case received multiple contracts from the City of Batesville on those same jobs even though they were not the lowest and best bidder and at times, were not the alternate bidder.

The Plaintiff filed this suit alleging that the City of Batesville, Brocato Construction, Inc, W & W Contractors, Inc., Rebel Construction Company, Inc., and Evans Sand & Gravel, Inc. violated

the antitrust laws, including the Clayton Act, of the United States and Mississippi by participating in noncompetitive bidding and acts of unreasonable restraint of trade. The Plaintiff also alleged that the Defendants violated his procedural and substantive due process rights under the Fourteenth Amendment. The Plaintiff asserted that Miss. Code Ann. § 31-7-13(d) provided him a property interest in the contracts since he was the lowest and best bidder. The Plaintiff alleged that the City of Batesville never held a hearing as to why he did not receive those jobs. Finally, the Plaintiff alleged that the City of Batesville committed arbitrary governmental action that violates the substantive prong of the due process clause.

In an Order dated July 10, 2006, this Court granted partial summary judgment to Defendant City of Batesville. The Court held that the Local Government Antitrust Act shielded the Defendant City of Batesville from all claims associated with violations of the Federal antitrust laws. On August 9, 2006, the Court impaneled a jury to hear the merits of this case. At the close of the Plaintiff's case, the Court entered judgment as a matter of law for all Defendants except the City of Batesville. In addition, the Plaintiff dropped his substantive due process claim against the City of Batesville. On August 14, 2006, a jury found that the City of Batesville had violated the Plaintiff's rights under Mississippi's public purchasing laws and found that the City of Batesville had violated the Plaintiff's rights under the due process clause. The jury awarded the Plaintiff damages in the amount of $45,000.

In its present motion, the Defendant argues that the jury's verdict should be set aside, the Court should grant the Defendant a new trial or that the awarded damages be remitted.

### B. *Standards for the Parties' Pending Motions*

Rule 50 of the Federal Rules of Civil Procedure sets forth the standard for granting judgment as a matter of law:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue. . . . In ruling on a renewed motion, the court may . . . allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law.

Fed. R. Civ. P. 50.

In applying this standard, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all reasonable factual inferences in that party's favor, and leave credibility determinations and the weighing of evidence to the jury. McCrary v. El Paso Energy Holdings, Inc., 209 F. Supp. 2d 649, 651 (N.D. Miss. 2002) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-50, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000)). The court should grant a motion for judgment as a matter of law only when "the facts and inferences point so strongly and overwhelmingly in favor of [the moving] party that the court believes that reasonable [jurors] could not arrive at a contrary verdict." Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969).

As for the Defendant's motion for a new trial, Rule 59 of the Federal Rules of Civil Procedure permits a trial court to grant a new trial based on that court's appraisal of the fairness of the trial and the reliability of the jury's verdict. The rule does not specify what grounds are necessary to support such a decision, but states only that the action may be taken "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a); Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985). A new trial may be granted, for example, if the district court finds that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in the course of the trial. The judgment will stand when the evidence presented at trial

could reasonably support the jury's verdict. See, e.g., Eyre v. McDonough Power Equip., Inc., 755 F.2d 416, 420-21 (5th Cir. 1985); Westbrook v. General Tire and Rubber Co., 754 F.2d 1233, 1241 (5th Cir. 1985). A motion for a new trial based on evidentiary grounds should not be granted unless, at a minimum, the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence. Carter v. Fenner, 136 F.3d 1000, 1010 (5th Cir. 1998).

As for the Defendant's motion for remittitur, there is a strong presumption in favor of affirming a jury award of damages, and a damage award may be overturned only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice. Westbrook, 754 F.2d at 1241. A verdict is excessive only if it is "contrary to right reason" or "entirely disproportionate to the injury sustained." Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 784 (5th Cir. 1983).

*C. Discussion*

1. Motion for Judgment as a Matter of Law

The Defendant moves for judgment as a matter of law on several grounds including: (1) Plaintiff's Mississippi Bid Law claims fail under Miss. Code Ann. §11-51-75; (2) Plaintiff's claims are barred because he failed to appeal the City of Batesville's actions under Miss. Code Ann. §11-51-75; (3) the Plaintiff did not have a property interest; (4) the Plaintiff's procedural due process claims fail because the City of Batesville did not delegate authority to disregard the alternate bid provisions and the Plaintiff was provided with an adequate post-deprivation remedy; and (5) the Plaintiff's damages were speculative and uncertain. The Court will consider each argument in turn while considering all evidence in the light most favorable to the Plaintiff.

*A. Mississippi Public Purchasing Law Claims*

Government authorities, including a municipality's board of alderman, may make purchases

from the lowest and best bidder. Miss. Code Ann. § 31-7-13(d)(I). If a governing authority accepts any bid other than the lowest bid, the governing authority must place on its minutes a detailed explanation showing how that bid is the lowest and best bid. Id. A governing authority may accept no more than two alternate bids for commodities to ensure the timely completion of public works projects. Miss. Code Ann. § 31-7-13(f). A purchase cannot be made through the alternate bids unless the lowest and best bidder cannot deliver the commodities contained in his bid. Id.

During trial, the Plaintiff put on substantial proof that he was the lowest and best bidder for several commodities during 2003 and 2004. The Plaintiff also submitted proof through documents and witness testimony that the Defendant used his services one time during those two years. The Plaintiff put on further proof showing that the City of Batesville used the alternate bids and at times used those who were not alternate bids to deliver commodities for which he was the lowest and best bidder. The Plaintiff and his wife testified that he had a home phone with an answering machine and a cell phone which he carried with him at all times. The Plaintiff further testified that he always returned missed calls because his livelihood depends on him answering his phone.

The Defendant explained to the jury that it had difficulty in contacting the Plaintiff. In fact, during all of the times that the Plaintiff complained to City of Batesville officials about his lack of work, not once did any of those officials inform the Plaintiff that they had difficulty contacting him. At trial, one of the Defendant's employees testified and produced documents showing that the Defendant was in possession of both of the Plaintiff's contact numbers. It is apparent that the jury weighed the evidence and found the Plaintiff's evidence and testimony credible. It is further apparent that the jury did not find the Defendant's explanation credible. Now, the Defendant asks the Court to overturn the jury's findings and verdict.

The Court is of the opinion that the Defendant has not produced any evidence or pointed to

a lack of evidence by the Plaintiff to overturn this portion of the jury's verdict. The Court notes that the Defendant could have produced either the City's or the Plaintiff's phone records to prove that City had attempted to call the Plaintiff and he did not respond. The Defendant chose not to produce such documentation. The Court is of the opinion that a reasonable jury hearing all the evidence, weighing the credibility of that evidence and witness testimony, could find that the Defendant violated the procedures under Miss. Code Ann. § 31-7-13(d) (Rev. 2005) and § 31-7-13(f) (Rev. 2005). The Court finds that the jury's verdict was not against the overwhelming weight of the evidence and the Defendant has not met its burden in seeking judgment as a matter of law. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-50, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000).

### B. Claim Preclusion Under Miss. Code Ann. § 11-51-75

The Defendant argues that the Plaintiff's claims are barred because he failed to appeal the City's decision through a Bill of Exceptions. The Defendant argues that Plaintiff's lack of appeal qualifies as a final judgment by a Mississippi State Court and he cannot relitigate this issue pursuant to the Full Faith and Credit Clause. The Defendant argues that the City made its decision not to use the Plaintiff's services and he had ten days from each instance to file a bill of exceptions. The Defendant argues that since the Plaintiff failed to take such action he cannot now litigate these claims in Federal Court.

"Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten days from the date of adjournment at which session of the board or supervisors or municipal authorities rendered such judgment or decision..." Miss. Code Ann. § 11-51-75.

The Full Faith and Credit Clause of the United States Constitution states that "Full Faith and

Credit shall be given in each State to public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws, prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U. S. Const. Art. IV, § 1. The modern version of the Full Faith and Credit Act, codified at 28 U.S.C. § 1738, demands that "judicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the court of such State..." This statute has long been understood to encompass the judicial doctrines of collateral estoppel, or "issue preclusion," and res judicata, or "claim preclusion." San Remo Hotel v. City and County of San Francisco, 545 U.S. 323, 336, 125 S. Ct. 2491, 2500, 161 L. Ed. 2d 315 (2005). See Allen v. McCurry, 449 U.S. 90, 94-96, 101 S. Ct. 411, 66 L. Ed. 2d (1980). Res judicata has been defined as a final judgment on the merits that prevents a party from relitigating an issue or issues that could have been raised in that action. San Remo Hotel, 545 U.S. at 336, 125 S. Ct. at 2500; (*citing* Allen, 449 U.S. at 94, 101 S. Ct. 411). The doctrine of collateral estoppel prevents a party from relitigating a particular issue of fact or law in any action involving a party to the first case when the Court in the first case has decided that issue. Id.

Whether a judgment is entitled to preclusive effect under § 1738 depends on whether the party against whom the state court judgment was rendered has had a full and fair opportunity to litigate the claim at issue. Raju v. Rhodes, 809 F. Supp. 1229, 1234, (S.D. Miss. 1992) (*citing* Allen v. McCurry, 449 U.S. at 95, 101 S. Ct. at 415)). "State proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481, 102 S. Ct. 1883, 1897-98, 72 L. Ed 2d 262 (1982). In Raju, the United States District Court for the Southern District of Mississippi tackled this very issue in a case where a

professor of surgery at a state hospital brought an action against his supervisor for breach of contract, tortious interference with business and a § 1983 claim. 809 F. Supp. at 1233. In that case, Dr. Raju, the aggrieved party, had three levels of administrative remedies at the institutional level. Id. There was a grievance to Dr. Rhodes, a grievance to the associate dean, and then a faculty grievance committee heard evidence concerning Dr. Raju's reassignment. Id. After the institutional remedies were exhausted, Dr. Raju requested review by the Board of Trustees of State Institutions of Higher Learning, which considered Dr. Raju's grievance and determined that due process procedures were followed and the institution's decision was not arbitrary and capricious. Id. The Board of Trustees affirmed the grievance committee's findings. Id. Dr. Raju then perfected an appeal to the Circuit Court of Hinds County, Mississippi, which also affirmed the decision of the Board of Trustees. Id. The District Court found that the combined administrative hearing and judicial review procedures satisfied the minimum procedural requirements of the Fourteenth Amendment Due Process Clause. Id. at 1235. Thus, the Court found that Dr. Raju was precluded from relitigating those issues in federal court. Id.

The Due Process Clause of the United States Constitution states, in pertinent part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. In order for the protections of the Fourteenth Amendment to be accorded to the Plaintiff, he must have suffered a deprivation of life, liberty or property. Cabrol v. Town of Youngsville, 106 F.3d 101, 105 (5th Cir. 1997) (*citing* Blackburn v. City of Marshall, 42 F.3d 925, 935 (5th Cir. 1996)); see Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 548 (1972). The denial of a full and fair opportunity to litigate is a defense to collateral estoppel. Pactiv Corp. v. Dow Chemical Co., 449 F.3d 1227, 1233 (2d. Cir. 2006); Nat'l Labor Relations Bd. v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir. 1999). In the context of collateral estoppel, a court may

refuse to grant preclusive effect when there is a compelling showing of unfairness or inadequacy in the prior litigation. See Montana v. United States, 440 U.S. 147, 163-64, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979). When federal courts are bound by 28 U.S.C. § 1738, state proceedings need to do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law. Kremer, 456 U.S. at 481, 102 S. Ct. 1883. Kremer merely requires that the prior judgment be denied preclusive effect when there has been a due process violation. Id. In Fehlhaber v. Fehlhaber, the Fifth Circuit held that due process requirements in a civil case implicating only property interests are much less stringent than those in a criminal case implicating life and liberty interests. 681 F. 2d 1015, 1027 (5th Cir. 1982). That court held that all due process required in a civil cases included proper notice, service of process and a court of competent jurisdiction. Id. The Fifth Circuit further stated that even serious procedural irregularities during the case would not subject it to collateral attack. Id.

In the case *sub judice*, the Defendant asserts that the Plaintiff should be precluded from litigating the violation of the Mississippi Public Purchasing Laws because he failed to exhaust the remedy available under a Bill of Exceptions pursuant to Miss. Code Ann. § 11-51-75. The Defendant asserts that Plaintiff's failure to perfect a Bill of Exceptions within the ten-day time table acts as a final judgment in state court that should have preclusive effect in this Court pursuant to 28 U.S.C. § 1738. This Court does not agree.

The Court is of the opinion that there was never a final decision made by the City of Batesville's Board of Alderman. The City of Batesville's Board of Alderman accepted the Plaintiff as the low and best bidder on several projects and the alternate bidder on other projects during the years 2003 and 2004. There was never a decision placed on the City of Batesville's minutes denying

any of the aggrieved commodities jobs to the Plaintiff. The Mayor, also the Public Works Director, never told the Plaintiff nor made the decision that the Plaintiff was not going to get the job. Thus, no municipal authority ever made a decision that was located on the City of Batesville's Board of Alderman's minutes. Therefore, the Court is of the opinion that the Plaintiff never had notice of a decision that negatively impacted him. Without such notice, the Plaintiff could not follow the procedures listed in Miss. Code Ann. § 11-51-75. Thus, the Court finds that there was never a final state court judgment that would preclude it from hearing the Plaintiff's claims.

However, since the Defendant claims that there was a final state court judgment, the Court will address that argument as well. The Court notes that there was no proof at trial that the Plaintiff was ever notified that he could not be reached. In addition, there was no notice given to the Plaintiff that the Defendant was using the alternate bidder because he could not deliver the commodities. In fact, there was no evidence at trial that the Defendant placed on its minutes that the Plaintiff could not deliver the commodities; thus, an alternate bidder was required to do the job. The Defendants did produce one document showing that it attempted to call the Plaintiff on one occasion and he was unavailable.

The Court is of the opinion that when the Defendant made a decision to use someone beside the Plaintiff, the Plaintiff never received notice of an official action. Thus, there was no way that the Plaintiff could be expected to file a Bill of Exceptions. The Defendant argues that his failure to do so resulted in a final state court judgment. In order for this Court to hold that the final state court judgment would have preclusive effect, the minimal procedural requirements of the Due Process Clause of the Fourteenth Amendment must be met. The Court is of the opinion that such a judgment would be invalid because the Plaintiff never had notice of an opportunity to air his grievances. First, he was never on notice that an official action took place. Second, he was never informed how to

appeal the City's decision. The Plaintiff contacted the mayor several times and the mayor never told him that he had such a remedy. The mayor was well-versed in municipal law from his long-standing service as mayor. However, the mayor replied that he was not required to help the Plaintiff.

The Court finds that the Defendant's alleged final state court judgment would be invalid even if one existed. The Plaintiff never received notice of an opportunity to litigate his claims in state court. Thus, that procedure violates the procedural prong of the Due Process Clause. The Court further opines that the City of Batesville should inform citizens of the opportunity provided to them by Miss. Code Ann. § 11-51-75. The Clerk of Court in the Panola County Circuit Court testified that she could not remember any instance during her tenure where a Bill of Exceptions was filed. In addition, she stated that she could not explain the proper filing procedure for a Bill of Exceptions to a citizen of Batesville. The Court finds that process to be wholly slanted in favor of the Defendant and any attempt to use collateral estoppel in the future is jeopardized by the lack of notice in this process. Thus, the Court finds this argument is meritless and the Defendant is not entitled to judgment as a matter of law.

### C. *Procedural Due Process and Property Interests*

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. The procedural component of the Due Process Clause does not protect everything that might be described as a "benefit" or interest. Town of Castle Rock v. Gonzales, 545 U.S. 748, 125 S. Ct. 2796, 2803, 162 L. Ed. 2d 658 (2005). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. at 577. Property interests are not created by the Constitution; rather, they are created and their

dimensions are defined by existing rules or understandings that stem from an independent source such as state statutes, local ordinances, contractual provisions, or mutually explicit understandings. Blackburn v. City of Marshall, 42 F.3d 925, 936-37 (5th Cir. 1995); Paul v. Davis, 424 U.S. 693, 709, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); Perry v. Sinderman, 408 U.S. 593, 599-601, 92 S. Ct. 2693, 33 L. Ed. 2d 570 (1972); Roth, 408 U.S. at 577, 92 S. Ct. 2701; see also Phillips v. Washington Legal Foundation, 524 U.S. 156, 164, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1988). Indeed, when the property interest is not based on a substantive federal law or statute, "the sufficiency of the claim of entitlement must be decided by reference to state law." Bishop v. Wood, 426 U.S. 341, 344, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976); see Blackburn, 42 F. 3d at 937 n. 12.

The United States Supreme Court has "made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." Roth, 408 U.S. at 571-72, 92 S. Ct. 2701. The "types of interests protected as 'property' are varied and, as often as not, intangible, 'relating to the whole domain of social and economic fact.'" Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S. Ct. 1148, 71 L. Ed. 2d265 (1982); see also Perry v. Sinderman, 408 U.S. 593, 501, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) (" '[P]roperty' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings' "). The United States Supreme Court has found "property " interests in a number of different areas, including welfare benefits, Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970); disability benefits, Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); public education, Goss v. Lopez, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); utility services, Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978); government employment, Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532,

105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); as well as other entitlements that defy easy categorization, see e.g., Bell v. Burson, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971); (due process requires fair procedures before a driver's license may be revoked pending the adjudication of an accident claim); Logan v. Zimmerman Brush Co., 455 U.S. 422, 431, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982) (due process prohibits the arbitrary denial of a person's interest in adjudicating a claim before a state commission).

The Court notes that the Defendant has produced authority supporting its position that there is no property interest in a publicly bid contract. The Court further notes that the Fifth Circuit has not squarely addressed this particular issue. In addition, the Court is of the opinion that the factual scenario presented in this case radically differs from all of the cases the Defendant cites as authority. In such case, the Court must look elsewhere for guidance on this issue. In doing so, this Court has surveyed authority from the United States Supreme Court, the other Circuit Courts of Appeals, and the Mississippi Supreme Court. After a thorough and exhaustive survey of this issue, the Court is of the opinion that the Plaintiff possessed a property interest in the publicly bid contracts where he was the lowest and best bidder. The Court's authority and analysis follows.

In Expert Masonry, Inc. v. Boone County, the Sixth Circuit addressed the issue of whether a disappointed bidder had a cognizable property interest in construction projects. 440 F.3d 336 (6th Cir. 2006). The Plaintiff in that case argued that the Defendant violated the bidding procedures and that he had a property interest in that publicly bid contract. Id. at 341. The binding precedent in the Sixth Circuit stated that a constitutionally protected property interest in a publicly bid contract could be demonstrated in two ways. Id. at 348. First, a bidder can show it was actually awarded the contract and then deprived of it; or second, that under state law, the County had limited discretion, which it abused, in awarding the contract. Id. Enertech Electrical, Inc. v. Mahoning County

Comm'rs, 85 F.3d 257, 260 (6th Cir. 1996). In Boone County, the Plaintiff alleged that the County had abused its limited discretion in awarding the contract. Id. The Court found that the Defendant was not limited by any state statue in the manner of awarding the contract except for a prohibition against fraud. Id. at 349.

Similarly, the Eight Circuit has recognized that a property interest does exist for a bidder in a publicly bid contract. Harris v. Hays, 452 F.3d 714 (8th Cir. 2006). In that case, the Eighth Circuit found that "Arkansas statutes create a property interest in a competitively bid public contract for the lowest bidder that complied with the bidding specifications and procedures." Id. at 719; L & H Sanitation, Inc. v. Lake City Sanitation, Inc., 769 F.2d 517, 524 (8th Cir. 1985). In Harris, an African-American independent contractor brought action against the city alleging race discrimination and deprivation of due process property rights in connection with a sidewalk construction contract. Id. at 715-16. The Eight Circuit found that the Plaintiff failed to prove that he was or would have been the low bidder. Id. at 719. Thus, that Court found for the Defendant.

In Robbins v. United States Bureau of Land Management, the Tenth Circuit announced that valid contracts may constitute a property interest for the purposes of due process. 438 F.3d 1074, 1085 (10th Cir. 2006). That Court went on to say that such a contract must entitle the Plaintiff to a substantive right or benefit. Id; Town of Castle Rock, 125 S. Ct. at 2803. An entitlement to nothing but procedure cannot be the basis for a property interest. Town of Castle Rock, 125 S. Ct. at 2808; Olim v. Wakinekona, 461 U.S. 238, 250, 103 S. Ct. 1741, 75 L. Ed. 2nd 813 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.").

In reviewing the testimony at trial and the parties briefs, the Court is of the opinion that the Plaintiff had a legitimate property interest in the public bids for commodities he had with the City

of Batesville. There is absolutely no question that the Plaintiff was awarded the contracts for various commodities and equipment work during the years 2003 and 2004. The testimony and evidence at trial showed that the Plaintiff was used only once for a portion of one project. The testimony and evidence further shows that the Defendant used the alternate bidder on several occasions. The Court is of the opinion that the Mississippi Public Purchasing Statute, codified at Miss. Code Ann. § 31-7-13, gives the Plaintiff a protected property interest in the project in which he was the lowest and best bidder. That property interest entitled the Plaintiff to notice and a hearing before that interest was deprived. The Defendant's lack of evidence showing that the Plaintiff was contacted weighs against it. In addition, the fact that the Plaintiff complained and was never given a final decision by the mayor or the City Board constitutes a lack of notice and hearing by the Defendant. Thus, the Court finds that the Plaintiff had a protected property interest in the publicly bid contract to be used as the lowest and best bidder. The Court agrees with the Sixth and Eighth Circuit Courts of Appeals that the Plaintiff was deprived of his contract; thus, vesting him with a protected property interest. Therefore, the Court finds that the Plaintiff had a protected property interest and the City of Batesville deprived him of that interest. Thus, the Court denies the Defendant's motion for judgment as a matter of law.

### 4. *Procedural Due Process and the Parratt/Taylor Doctrine*

The Defendant urges that no due process violation has occurred pursuant to the *Parratt/Hudson* doctrine. The Defendant argues that the City never acted pursuant to an official policy and also that an adequate post-deprivation remedy existed.

Under the *Parratt/Hudson* doctrine, "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate post-deprivation hearing."

Zinermon v. Burch, 494 U.S. 113, 115, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (*discussing* Parratt v. Taylor, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) and Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)). Where a municipal officer operates pursuant to a local custom or procedure, the *Parratt/Hudson* doctrine is inapplicable: actions in accordance with an "official policy" under Monell can hardly be labeled "random and unauthorized." Brooks v. George County, 84 F.3d 157, 165 (5th Cir, 1996) (*citing* Wilson v. Civil Town of Clayton, 839 F.2d 375, 380 (7th Cir. 1988)). Conduct is not "random and unauthorized" for purposes of the *Parratt/Hudson* doctrine if the state "delegated the power and authority to effect the very deprivation complained of." Allen v. Thomas, 388 F.3d 147, 149 (5th Cir. 2004) (*citing* Zinermon, 494 U.S. at 138, 110 S. Ct. 975).

The testimony in this case revealed that the job superintendents and the City's purchasing agent were responsible for contacting the individual contractors and acquiring the work needed by the City. The Plaintiff also testified that the mayor told him that each job was up to the individual supervisor. Thus, there was a question of fact for the jury to decide whether the City had a custom of allowing its superintendents to make decisions procuring contract and commodities work. In addition, there was a question of fact whether the City had delegated such authority to those superintendents. Thus, the Court is of the opinion that as a matter of law it would be inappropriate for the Court to apply the *Parratt/Hudson* doctrine. The Court is of the opinion that a reasonable jury hearing all the evidence, weighing the credibility of that evidence and witness testimony, could find that the Defendant delegated decision-making power to its superintendent. Thus, the Court will not disturb the jury's verdict and the Defendant's motion for judgment as a matter of law is not well-taken and the same is overruled.

*5. Damages*

In order to recover damages for lost profits based upon breach of contract, the claim must be established with reasonable certainty. Ishee v. The Peoples Bank, 737 So. 2d 1011, 1013 (Miss. Ct. App. 1999); Polk v. Sexton, 613 So. 2d 841, 844 (Miss. 1993); Lovett v. E.L. Garner, Inc., 511 So. 2d 1346, 1353 (Miss. 1987). The unique nature of each contract allows claims for lost profits to be determined on a case by case basis because there are no concrete elements of such a claim aside from their establishment to a reasonable certainty. Lovett, 511 So. 2d at 1353.

In Mississippi, a commonly recognized method of establishing lost profits is relying on past earnings or percentage profits as Shepard did in this case. Kaiser Inv., Inc. v. Linn Agriprises, Inc., 538 So. 2d 409, 416 (Miss. 1989). However, a court must take care that the past profits are comparable to the likely future profits so that the calculation of those future profits is not based on speculation and conjecture. Polk, 613 So. 2d at 844.

In the case *sub judice*, the Plaintiff put on proof of lost profits throughout the Plaintiff's testimony and the testimony of the other contractors originally named in the lawsuit. The Plaintiff stated what his profit percentage had been in the past and what his estimate of profits were on these jobs he never obtained. In addition, the other contractors, W & W, Evans, Rebel and Brocato all gave their estimate of profit margins on varied jobs. These contractors also testified that they try to make a certain percentage profit and the kind of work and the amount of labor required determine if it is ten percent or twenty percent. The Court notes that the Plaintiff failed to call an accountant to testify at trial. In addition, the Plaintiff failed to produce past earning statements. However, the Court is of the opinion that the damages sought were not based on speculation and conjecture, but from normal business functions. The jury heard the evidence and decided that the Plaintiff was due the amount of $45,000. The Court is of the opinion that the jury listened to the testimony and

reasonably decided the amount of damages. Therefore, the Defendant's motion for judgment as a matter of law is denied.

2. Motion for New Trial

The Defendant argues that it is entitled to a new trial for several reasons. First, the Defendant argues that the jury instructions failed to define what property interest was held by Shepard; incorrectly defined or failed to define what process is due under the alternate bidder provisions of the Mississippi Public Purchase Law, failed to define that the Mayor and Board of Alderman of a Mississippi Code Charter municipality are its final policy makers; and failed to inform the jury that an adequate post-deprivation remedy was available. Second, the Defendant argues that the verdict and jury award were against the overwhelming weight of the evidence.

After a thorough review of the Court's jury charge and a thorough review of the parties' proposed instructions, the Court is of the opinion that the jury was properly instructed in every face of the jury charge. The Defendant, as well as the Plaintiff, participated in the jury instruction conference with the Court. The Court has reviewed the transcript of that conference and is completely satisfied that the Defendant's misgivings were addressed. Thus, the Court finds that the jury was properly instructed in all areas of the trial.

As to the Defendant's argument that the verdict was against the overwhelming weight of the evidence, the Court finds that the motion is not well-taken. The Plaintiff put on sufficient proof to create a jury question as to whether the Defendant violated Mississippi law and denied Plaintiff his procedural rights under the Due Process Clause. The jury weighed the evidence before it and came to a verdict in favor of the Plaintiff. The jury's verdict was not contrary to the evidence, as outlined above, nor was it contrary to law. Accordingly, the Court finds that the Defendant's motion for new trial should be denied.

3. Remittur

The Defendant argues that the $45,000 verdict should be remitted because the evidence does not support such a verdict. The Court notes that the Plaintiff put on proof that he lost $40,000 in potential profits. The Plaintiff put on proof and argued to the jury that he was asking for $40,000. The $45,000 verdict in this case is not contrary or disproportionate. This Court favors a jury verdict strongly and hesitates to set aside any amount of damages that are reasonably calculated. The Court is satisfied that $45,000 is not outside the realm of reasonableness. Thus, the Court will uphold the jury verdict. Therefore, the Defendant's motion for remittur is not well-taken and shall be overruled.

*D. Conclusion*

In sum, the Court finds that the Defendant's motion for judgment as a matter of law shall be denied in all respects. In addition, the Court finds that the Defendant's motion for a new trial is not well-taken and shall be denied. The Court further finds that the verdict in this case was not outside the scope of the evidence presented or the realm of reasonablness; therefore, the Court shall deny Defendant's motion for remittur.

A separate order in accordance with this opinion shall issue this day.

This the 8th day of January 2007.

/s/ Glen H. Davidson  
Chief Judge